**NOT YET SCHEDULED FOR ORAL ARGUMENT**

**No. 26-5253**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

NEW YORK TIMES COMPANY, *et al.*,
Plaintiffs-Appellees,

v.

DEPARTMENT OF DEFENSE, also known as DEPARTMENT OF WAR, *et al.*,
Defendants-Appellants.

---

On Appeal from the United States District Court
for the District of Columbia

---

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR
STAY PENDING APPEAL BY JULY 16, 2026**

---

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney
  General*

BRAD HINSHELWOOD
JACK STARCHER
SEAN R. JANDA
*Attorneys, Appellate Staff
Civil Division, Room 7260
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
202-514-3388*

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY.................................................................. 1

ARGUMENT .................................................................................................... 2

I.     The Government Is Likely to Succeed on the Merits ............................ 2

        A.    The Escort Requirement Is Not an Adverse Action Targeting Plaintiffs that Would Deter an Ordinary Journalist ..................................................................................3

        B.    The Escort Requirement Was Not Caused by Any Impetus to Retaliate Against Plaintiffs ...........................................8

II.    The Equities Support a Stay.......................................................................11

CONCLUSION...............................................................................................15

CERTIFICATE OF COMPLIANCE

## INTRODUCTION AND SUMMARY

The district court enjoined the Department of War from implementing a requirement that journalists accessing the Pentagon be escorted. It did so without disputing that the requirement is a viewpoint-neutral restriction. It did so notwithstanding the Department's determination that the requirement is necessary to safeguard classified and other highly sensitive information, the unauthorized disclosure of which could be catastrophic. And it did so even though this Court stayed its previous injunction of the same policy. As the government has explained, this renewed injunction also should be stayed.

In response, plaintiffs attempt to contort the retaliation framework to fit the facts of this case. But they nowhere explain how, conceptually, a minimally burdensome, generally applicable regulatory requirement could constitute impermissible targeted adverse action in retaliation for specific expression. Indeed, they fail to identify any case from any court so concluding. Beyond that, they nowhere justify their attempt to end-run the usual rules applicable to a non-public forum. And they nowhere engage with the untenable results that many of their arguments would occasion by functionally prohibiting the Department from adopting neutral regulations of

journalists' access to the Pentagon, even though that secure building houses all manner of sensitive functions.

This Court should stay the preliminary injunction pending appeal by **Thursday, July 16, 2026,** when the district court's administrative stay expires. If the Court does not grant this motion, the government respectfully requests that the Court extend the administrative stay for a reasonable period to provide the government time to seek relief from the Supreme Court. That would maintain the status quo and be consistent with the district court's own administrative stay to permit this Court's review.

## ARGUMENT

### I.    The Government Is Likely to Succeed on the Merits

The escort requirement is a neutral regulation of access to the Pentagon—a sensitive, non-public government building to which no person has a right of access. That access restriction reflects only a minor burden, is not targeted at plaintiffs, and has been evenly applied to all journalists. It thus does not constitute an adverse action that could reasonably chill the speech of any journalist. Moreover, it was not adopted to retaliate against plaintiffs. The record makes clear that it was adopted to further important

national-security interests in preventing the unauthorized disclosure of classified and other highly sensitive information.

Despite plaintiffs' repeated attempts to seek refuge in the clear-error standard of review, the district court's application of the retaliation framework to these facts is premised on fundamental legal errors. And the court's conclusion that the requirement reflects retaliatory animus is suffused with legal errors and clearly erroneous even on its own terms. Plaintiffs have no persuasive response.

### A.    The Escort Requirement Is Not an Adverse Action Targeting Plaintiffs that Would Deter an Ordinary Journalist

1. Plaintiffs effectively concede—as they must—that the escort requirement does not single out plaintiffs but instead applies to all journalists accessing the Pentagon, regardless of the viewpoint of their speech. That alone should doom their retaliation claim. In response, plaintiffs cite no case from any court concluding that such a generally applicable regulation reflects impermissible retaliation. Instead, they brush aside that the requirement applies to everybody, stating without elaboration that the government "offer[s] no reason in law or logic why a punishment is less punishing because others must suffer too." Resp.16.

Both law and logic confirm the point. A plaintiff claiming retaliation must identify material "adverse action," *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022)—which typically involves showing that he has been "singled out," *Tao v. Freeh*, 27 F.3d 635, 639 (D.C. Cir. 1994). A requirement applicable to all journalists does not single out any journalist. And such a requirement cannot logically "deter" anybody's speech, *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (quotation omitted), because no speaker may escape the regulation by self-censoring. That conclusion is particularly evident here given the district court's view that "disdain for" myriad "legacy media outlets"—not any retaliatory impetus directed at plaintiffs specifically—led the Department to adopt the requirement. App.23 (quotation omitted).

Plaintiffs have no response to the precedent identified by the government rejecting the notion that a retaliatory action is "sufficiently adverse" when a plaintiff is simply subject to generally applicable access restrictions. *See ACLU of Md., Inc. v. Wicomico County*, 999 F.2d 780, 785-86 (4th Cir. 1993) (per curiam). And plaintiffs nowhere grapple with the fundamental mismatch between their claim and the escort requirement.

4

Plaintiffs miss the point when they observe (Resp.14-15) that a retaliation claim may be available even when the adverse action is not "inherently unlawful." The point is not that the escort requirement is inherently lawful (though it is); instead, it is that the requirement applies to all journalists regardless of the expression of any individual journalist and thus is not targeted at (and could not deter the speech of) any of them. Indeed, plaintiffs' primary support for their not-inherently-unlawful argument illustrates their error. There, a prisoner asserted that he alone had been transferred and classified as a "special offender" in retaliation for only his protected conduct, *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 580-81 (D.C. Cir. 2002) (quotation omitted)—exactly the sort of targeted adverse action missing here.

2. Moreover, no reasonable journalist could be chilled by a mere escort requirement (much less by *this* one, which applies to all journalists). In response, plaintiffs do not explain how any escort requirement—in contrast to, for example, "an arrest, a prosecution," or a firing, *Wilson*, 595 U.S. at 477—could be a sufficiently severe action to chill a journalist of ordinary firmness in his reporting. Instead, they commit another category error by focusing on the requirement's logistical burdens, Resp.13-14, and stating that

the requirement has "chilled" "informal and unplanned conversations," Resp.15 (quotation omitted).

The retaliation framework seeks to identify government action that punishes a speaker in hopes of deterring her from engaging in disfavored expression. *See* Mot.14-16. The fact that the escort requirement makes certain reporting efforts more challenging does not establish a relevant "chill." Indeed, every access restriction on every federal executive or judicial building—many of which heavily limit press access in non-public spaces—could be described as "chill[ing]" "informal and unplanned conversations" between reporters and federal employees. The same could be said of a government policy forbidding employees from having unauthorized conversations with journalists at work.

But those sorts of neutral, generally applicable requirements have never been regarded as "chilling" protected expression to establish a retaliation claim. And were it otherwise, the government's ability to impose restrictions on media access to government property would be called into doubt given the ease with which those restrictions could be alleged to reflect animus—a point plaintiffs likewise do not address. *See* Mot.16-17. Given that the government may permissibly restrict (indeed, altogether prohibit) access

6

to the Pentagon, the ordinary burdens that come with any generally applicable restriction cannot substitute for the requisite chill.

Instead, plaintiffs would need to show that the prospect of being subject to the requirement would lead an ordinary journalist to self-censor. They barely even try to make that showing. And plaintiffs' observation (Resp.15) that the relevant test is objective misses the point, which is that no journalist could reasonably be chilled by the requirement. Of course, that plaintiffs are unable to identify any journalist who has self-censored in response to the requirement only confirms the error of their position.

Moreover, plaintiffs have no persuasive response to the cases cited in the government's motion. They dismiss *Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410 (4th Cir. 2006), as involving an access restriction that was "a far cry from" the Department's escort requirement. Resp.16. That is true only insofar as the restriction was *more severe*: the Maryland Governor directed all employees not to speak with two specific reporters. *See Baltimore Sun*, 437 F.3d at 413. If that access requirement—applied to deny two specific reporters all access across Maryland's Executive Branch—did not constitute a sufficiently severe adverse action to support a retaliation claim, then a fortiori neither does the Department's modest and generally applicable

escort requirement. Nor do plaintiffs have any response to this Court's observation in *Ateba v. Leavitt*, 133 F.4th 114, 121 (D.C. Cir. 2025), that escort requirements are minimally burdensome, or the Fourth Circuit's conclusion in *Wicomico County*, 999 F.2d at 785-86, that generally applicable access requirements do not give rise to any retaliation claim.

**B.    The Escort Requirement Was Not Caused by Any Impetus to Retaliate Against Plaintiffs**

Regardless, plaintiffs fail to rehabilitate the district court's erroneous conclusion that the Department adopted the escort requirement because of retaliatory animus toward plaintiffs' protected expression.

Plaintiffs admit that none of the statements they identify in which Department officials have criticized plaintiffs' reporting are connected to the escort requirement. Resp.9. And plaintiffs' view that those statements "alone support[] the district court's finding of retaliatory motive," *id.*, only underscores that their approach is untenable. If that approach were correct, plaintiffs could rely on the same statements to bring a retaliation claim against any Department access regulation, no matter how reasonable or neutral. That result cannot be squared with the Department's unquestioned ability to regulate access to the Pentagon. *See* Mot.21.

Plaintiffs err further when they assert (Resp.9-11) some inconsistency in the Department's explanation for the requirement. Plaintiffs fault the Department for not including its full rationale in "the Interim Policy itself." Resp.10 (quotation omitted). But the Interim Policy contained various requirements, and it is unsurprising that the Department did not flesh out the specific, detailed rationale for each in the Policy itself.

Nor do plaintiffs identify any real inconsistency among the Department's explanations. In the Interim Policy, the Department explained that the Policy is generally aimed at "preserving the Department's legitimate security interests" and that the particular risks of unescorted access were heightened by the vacatur of requirements in the October Policy that the Department viewed as allowing it to effectively "screen PFAC holders for security risks." App.40-41. The Department has now elaborated on the specific security interests at stake; that elaboration adds to, rather than retreats from, the Department's initial explanation.

Plaintiffs' attack on the reasonableness of the Department's explanation is no better. For one, even if the explanation were unreasonable, that would not establish retaliation. But regardless, plaintiffs are wrong. Their argument turns on the assertion that they have obtained as much or

9

more "nonpublic information" following the access restrictions as they did before. Resp.11-12; *see also* Supp.App.48-49.

Even if true, that only further undermines plaintiffs' suggestion that the requirement would chill a reasonable journalist—and it certainly fails to refute the Department's explanation. Plaintiffs' assertions about their own reporting do not speak to journalists as a whole, and the Department has explained that it experienced a "dramatic[]" drop in the frequency with which it learned of journalists' receiving "sensitive, controlled or classified information" after it imposed access restrictions. App.89.

Moreover, it should be obvious that not all "nonpublic information" is created equal. The escort requirement grew out of specific concerns about the frequency with which "[c]ontrolled unclassified information and classified information reached journalists." App.88. The Department's concern about disclosures of this highly sensitive information occurring "monthly, and sometimes multiple times per month," *id.*, plainly is not an undifferentiated concern with all "scoops" of "non-public information," Supp.App.48-49 (quotation omitted). Plaintiffs' general assertions about "non-public information" thus do not negate the Department's conclusions.

10

Finally, plaintiffs undermine their theory when they focus on the Interim Policy's issuance "immediately after" the district court vacated portions of the October Policy. Resp.12 (quotation omitted). The natural inference from that timing is that (as the Interim Policy says) the Department responded to the vacatur by revising its requirements to "comply with the Court's order while preserving the Department's legitimate security interests," App.40—not that the policy reflects retaliation against plaintiffs. As this Court has confirmed, "an agency may respond to an adverse ruling by adopting a revised policy," *New York Times Co. v. U.S. Dep't of Def.*, 2026 WL 1179440, at *3 (D.C. Cir. Apr. 27, 2026) (per curiam), and such a response to a court's judgment does not ordinarily reflect some retaliatory attempt to "deprive" the plaintiff "of the value" of the judgment, Resp.12.

## II.    The Equities Support a Stay

The equitable factors support a stay. The government and public have a clear interest in safeguarding classified and controlled information, which the escort requirement furthers. Conversely, plaintiffs have an extremely limited interest in roaming the Pentagon unescorted.

11

1. Plaintiffs do not dispute that the unauthorized disclosure of classified and controlled information may result in grave harm to the Nation's security. Nor do they dispute that the government's interest in avoiding such harm may support a stay pending appeal. *See* Mot.24-25.

Instead, plaintiffs' only response is to argue the escort requirement will not prevent the disclosure of such information. But the government has already explained the error in this argument, which relies on plaintiffs' undifferentiated treatment of all "non-public information." The record reflects that the Department has experienced a "dramatic[]" decline in the frequency with which it has learned of journalists' obtaining classified, controlled, and similar sensitive information since it first imposed access restrictions last year. App.89. That dramatic decrease supports the need for a stay.

Even assuming plaintiffs have continued to obtain highly sensitive information about which the Department is concerned, that would provide no basis for denying the stay motion. The government has clearly explained the ways in which journalists have exploited unregulated access to the Pentagon to enable their pursuit of potential classified and highly sensitive information. Plaintiffs (properly) assert no freestanding right to have the Department

facilitate their access to such information. And plaintiffs cannot leverage their own ongoing pursuit of the information (even if sometimes successful) into a basis for preventing the Department from taking reasonable measures to reduce its unauthorized disclosure.

Plaintiffs underscore their error when they state that the district court's injunction will allow them to "regain" the "same access they previously had." Resp.17. As the Department has explained, the access that reporters "previously had" led to the regular disclosure of classified and other highly sensitive information. The government and the public have a plain interest in avoiding a return to that state.

2. Plaintiffs fail to establish countervailing interests that could outweigh those harms. Plaintiffs' theory of irreparable harm rests almost entirely on the proposition that the escort requirement is a "violation of their First Amendment rights." Resp.18-19. But because the Department is likely to succeed on the merits, plaintiffs cannot establish even an abstract injury to their constitutional rights.

And when it comes to the concrete effects of the escort requirement, plaintiffs' claims fall far short. For one, plaintiffs' assertion that the escort requirement irreparably impairs their newsgathering is hard to reconcile

with their insistence that the requirement will not prevent—indeed, has not prevented in their reporting—the unauthorized disclosure of information. But even setting aside that inherent tension, plaintiffs have no serious response to the point (previously recognized by this Court, *see Ateba*, 133 F.4th at 121) that an escort requirement is simply an inconvenience that is much less burdensome than denying access altogether. Particularly in the context of the Pentagon—a non-public military facility to which plaintiffs have no freestanding right of access—the need to comply with such a requirement does not reflect any sufficiently serious harm that could support denying the government's motion.

14

## CONCLUSION

For the foregoing reasons and those in the government's motion, the

Court should stay pending appeal the district court's injunction.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney
General*

BRAD HINSHELWOOD
JACK STARCHER

/s/ *Sean R. Janda*

SEAN R. JANDA
*Attorneys, Appellate Staff
Civil Division, Room 7260
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-3388
sean.r.janda@usdoj.gov*

July 2026

# CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2590 words. This reply also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

/s/ Sean R. Janda
SEAN R. JANDA