# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 26-5253**                                    **September Term, 2025**

**1:26-cv-01690-PLF**

**Filed On: July 16, 2026**

New York Times Company and Julian E. Barnes,

      Appellees

    v.

United States Department of Defense, also known as Department of War, et al.,

      Appellants

    **BEFORE:**    Henderson, Millett, and Garcia[*], Circuit Judges

## O R D E R

Upon consideration of the emergency motion for stay pending appeal, the opposition thereto, and the reply; and the motion for leave to submit additional evidence, the lodged declaration, the notice of errata, which contains a corrected motion for leave to submit additional evidence, and the response to the corrected motion, it is

**ORDERED** that the corrected motion for leave to submit additional evidence be granted. The Clerk is directed to file the lodged declaration of David McCraw. It is

**FURTHER ORDERED** that the emergency motion for stay be granted and that the district court's June 30, 2026, order be stayed. Appellants have satisfied the stringent requirements for a stay pending appeal. See Nken v. Holder, 556 U.S. 418, 434 (2009); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2025). Because the parties have established weighty interests on both sides of the case, our decision turns on the merits. See Ohio v. EPA, 603 U.S. 279, 292 (2024).

_____

[*] Circuit Judge Garcia would deny the emergency motion for stay for the reasons stated in the attached dissenting statement.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 26-5253**                                    **September Term, 2025**


On that point, appellants have demonstrated that, on the record before us, they are likely to succeed on their argument that this generally applicable escort requirement does not constitute a "sufficiently adverse action to give rise to an actionable First Amendment claim" of retaliation.  See Houston Cmty. Coll. Sys. v. Wilson, 595 U.S. 468, 477 (2022); see also Media Matters for Am. v. Paxton, 138 F.4th 563, 581 (D.C. Cir. 2025).  Appellees have not argued that the escort requirement is not, in fact, generally applicable and applied across the board to all reporters.  Nor have they argued that the policy is not being implemented evenhandedly.  Neither have they contended that the policy has a distinctively adverse impact on them or their news reporting ability that is different from the policy's effect on all other covered reporters.  In addition, neither Appellees nor the dissenting opinion cite a single case supporting their conclusion that this neutrally and evenhandedly applied, generally applicable policy with no demonstrated distinctive harmful impact on Appellees can, without more, constitute retaliation under the First Amendment.  Finally, Appellees' claims that the escort requirement is unlawful for reasons other than retaliation have not been raised before us as a basis for denying the stay.  It is

**FURTHER ORDERED**, on the court's own motion, that this case be expedited and that the following briefing schedule apply:

| | |
|---|---|
| Appellants' Brief | August 10, 2026 |
| Appendix | August 10, 2026 |
| Appellees' Brief | September 4, 2026 |
| Appellants' Reply Brief | September 18, 2026 |

The Clerk is instructed to calendar this case for oral argument on the first appropriate date following the completion of briefing.  The parties will be informed later of the date of oral argument and the composition of the merits panel.

Appellants should raise all issues and arguments in the opening brief.  The court ordinarily will not consider issues and arguments raised for the first time in the reply brief.

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

## No. 26-5253                                    September Term, 2025

To enhance the clarity of their briefs, the parties are urged to limit the use of abbreviations, including acronyms.  While acronyms may be used for entities and statutes with widely recognized initials, briefs should not contain acronyms that are not widely known.  See D.C. Circuit Handbook of Practice and Internal Procedures 43-44 (2025); Notice Regarding Use of Acronyms (D.C. Cir. Jan. 26, 2010).

Parties are strongly encouraged to hand deliver the paper copies of their briefs to the Clerk's office on the date due.  Filing by mail may delay the processing of the brief. Additionally, counsel are reminded that if filing by mail, they must use a class of mail that is at least as expeditious as first-class mail.  See Fed. R. App. P. 25(a).  All briefs and appendices must contain the date that the case is scheduled for oral argument at the top of the cover.  See D.C. Cir. Rule 28(a)(8).

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:     /s/
Laura M. Morgan
Deputy Clerk

GARCIA, *Circuit Judge*, dissenting:

In October 2025, the Department of Defense adopted a new, restrictive policy governing credentials for journalists at the Pentagon. The New York Times and its reporter Julian Barnes sued, and the district court issued an injunction. *See N.Y. Times Co. v. Dep't of Def.*, 824 F. Supp. 3d 27 (D.D.C. 2026). Within days, the Department announced a new policy that, among other things, required credentialed reporters to be escorted at all times while on Pentagon grounds. The Times and Barnes moved to compel compliance, arguing that the escort requirement ran afoul of the district court's order. The district court granted that motion. *See N.Y. Times Co. v. Dep't of Def.*, 2026 WL 962252 (D.D.C. Apr. 9, 2026). This court—based on my vote and Judge Walker's—granted the government's request for a limited stay pending appeal because the district court's original injunction "did not address" the later-imposed escort requirement and "the district court did not hold that the escort requirement independently violates" the Constitution. *N.Y. Times Co. v. Dep't of Def.*, 2026 WL1179440, at *3 (D.C. Cir. Apr. 27, 2026).

The district court has now assessed the lawfulness of the escort requirement. The Times and Barnes filed a separate lawsuit directly challenging the new policy. The district court preliminarily enjoined the policy's escort requirement after determining that "it was issued to retaliate against the plaintiffs for exercising their constitutional rights." *N.Y. Times Co. v. Dep't of Def.*, 2026 WL 1872765, at *7 (D.D.C. June 30, 2026).

The district court found all three elements of a First Amendment retaliation claim satisfied: (1) The plaintiffs engaged in "activity protected under the First Amendment," (2) the escort requirement is an "adverse action that would deter persons of ordinary firmness from exercising their First Amendment rights," and (3) there was a causal link between the plaintiffs' protected activity and the imposition of the escort requirement. *Id.* at *7–13 (citing *Media Matters for Am. v.*

2

*Paxton*, 138 F.4th 563, 584 (D.C. Cir. 2025)).  The first element was undisputed.  *Id.* at *7.  As to the second, relying on declarations from affected reporters, former Department officials, and other record materials, the district court concluded that the escort requirement "inescapably burdened" the plaintiffs' journalistic work.  *Id.* at *9.  Specifically, it dramatically reduced their practical ability to access the premises and rendered informal and spontaneous interactions with government sources difficult if not impossible. *Id.*  As the district court observed, the requirement thus "made it exceedingly challenging to . . . cover the Department and the U.S. military from Pentagon grounds."  *Id.* (quoting Barnes Decl. ¶ 25); *see also* Opp'n to Mot. for Stay 15 ("An ordinary journalist or news organization threatened with the loss of an entire method of newsgathering based on the substance of their journalism or their willingness to defend their constitutional rights in court would most certainly feel a chill.").  And for the causal link, the district court found "evidence of retaliatory motive" in "myriad statements by Department officials expressing disdain for reporting by The Times and other 'legacy' media outlets" starting "shortly after the confirmation of Secretary Hegseth and continuing through the present." 2026 WL 1872765, at *10.  Those "hostile" statements, coupled with the Pentagon's shifting and "facially dubious" rationales for imposing the escort requirement, demonstrated that the requirement would not have been adopted but for the plaintiffs' protected First Amendment activities.  *Id.* at *10–12.

In seeking a stay, the government disputes the second and third elements—the existence of a sufficiently adverse action and a causal link between that action and the plaintiffs' First Amendment activity.  The district court's factual findings on the third element can be set aside only if clearly erroneous.  *See Media Matters for Am. v. FTC*, 2025 WL 2988966, at *6–9 (D.C. Cir. Oct. 23, 2025).  The government has not met that standard, and I do not read the majority to suggest otherwise.

3

As to the second element, courts appear to disagree over the correct standard of review, and this court has yet to weigh in. *See Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) (de novo); *Bennie v. Munn*, 822 F.3d 392, 398 (8th Cir. 2016) (clear error); *see also Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (collecting cases describing the question whether an action is sufficiently adverse as "factual in nature").  Even if review on that issue is de novo, given the extensive record evidence of the escort requirement's impact, in my view the government has not shown it is likely to succeed on this front either.

The majority's decision to grant the stay apparently rests on the proposition that a policy like the escort requirement cannot constitute an adverse action if it is "generally applicable" on paper and in practice.  But the majority cites no binding precedent for that proposition, and none exists.  We have never held that a government policy cannot constitute unconstitutional retaliation simply because it is evenhanded.  And such a holding would likely be incorrect.  We have emphasized that the adverse-action inquiry poses a relatively low bar.  *Cf. Tao v. Freeh*, 27 F.3d 635, 639 (D.C. Cir. 1994) (noting that "the First Amendment protects . . . from 'even an act of retaliation as trivial as failing to hold a birthday party for a public employee'" (quoting *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 n.8 (1990)).  This element is meant to screen out claims based on government actions so minor they would not "inhibit an ordinary person from speaking." *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002).  If threatening to impose a requirement like the escort requirement on one journalist would (as the district court found) sufficiently chill his speech, it makes little sense to suggest that effect evaporates if the government threatens to impose the same requirement on *all* reporters.  Indeed, the chilling effect on a speaker with any regard for his peers may be amplified.  Perhaps a policy that places a speaker at a unique

4

disadvantage would be even more chilling in certain circumstances. But a retaliatory government policy should not be immunized simply because it is broadly and evenly applied.

For these reasons, I would deny the stay pending appeal.